IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOUNDRA CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: |
| v. ) | 21-cv-314 |
| ) | JURY DEMAND |
| ) | |
| COLE & COLE, INC. d/b/a THE GULF ) | |
| BOWL and CAPTAIN'S CHOICE ) | |
| RESTAURANT, ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

**I.     JURISDICTION**

1. The suit is brought to secure the protection of and to redress the deprivations of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981 and 42 U.S.C. §1981a, which provide for relief against race and national origin discrimination and retaliation in employment. Plaintiff seeks injunctive relief, equitable relief, compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. §1981a.

**II.     JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4) and 28 U.S.C. §§2201 and 2202.

3. A substantial portion of the unlawful employment practices alleged hereinbelow were committed by the Defendant within Baldwin County. Venue is proper in this Court pursuant to 28

U.S.C. §1391(b).

4. Plaintiff has filed her race and national origin discrimination and retaliation case within four (4) years of the discriminatory/retaliatory treatment.

5. Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C. §1981a.

## III.   FACTUAL ALLEGATIONS

6. Plaintiff was employed with Defendant from May 2019 until her constructive discharge on May 27, 2020. During Plaintiff's entire employment with Defendant, she was subjected to a hostile work environment based on her race and ethnic heritage. Plaintiff is an African-American and has Jamaican heritage.

7. Plaintiff worked as a line cook for Defendant. In that position, Plaintiff worked with a man named Edward Fortner ("Fortner"), who worked as a manager and line cook. Fortner is Caucasian. Fortner consistently harassed Plaintiff by using racial slurs, making comments about African-American people, Jamaicans and foreigners, and treating the plaintiff poorly.

8. Plaintiff heard Fortner use the word "nigger" in conversation numerous times whenever he would talk about African-American people. For example, Plaintiff heard Fortner say to someone when talking about working construction, "me and my nigger friend and a Mexican used to work together. They may be some dirty people but they sure do work hard." Plaintiff would further hear Fortner say "nigger" on a weekly basis during the time that they worked together.

9. Once Plaintiff was working on the line and had to step away to get something. Fortner was talking to a new guy and the plaintiff had to squeeze between them to get to where she was going. Fortner grabbed the plaintiff's head and put his hands over her ears and said "Nigger." He then released the plaintiff and let her go. Plaintiff reported this incident to Lisa Jacobson who

was the General Manager.

10. Fortner would also say things in front of the plaintiff and other employees like "Trump needs to get rid of the Mexicans, foreigners, and Jamaicans." Fortner knew the plaintiff was of Jamaican heritage and knew that another African-American employee, Natalie, was also of Jamaican heritage when he said this things in front of them. Fortner also said "F" the Jamaicans and "Trump should build that wall and every foreigner needs to go back to where they came from."

11. Plaintiff reported Fortner's racist behavior several times to the General Manager, Lisa Jacobson. When the plaintiff told Jacobson about Fortner grabbing her head, Lisa laughed in the plaintiff's face and did not take any action against Fortner. When the plaintiff told her about the comments about foreigners, Lisa said that Fortner did not really mean it and, again, did not take any disciplinary action against Fortner.

12. When Plaintiff told Jacobson about Fortner grabbing her head and calling her a "nigger," she told the plaintiff that she should not be offended because she wasn't working in the fields and said "there are black niggers and white niggers and all kinds of trash, if you feel like that, that's what you are." Jacobson also told the plaintiff that Fortner would not do this because he had black grandkids. Fortner admitted that he had said racial things in front of the plaintiff and even apologized. However, after this, Fortner continued to still used the same racial language in front of the plaintiff.

13. Jacobson also tried to bring the plaintiff's deceased grandmother into the conversation. Jacobson and the plaintiff's grandmother had worked together before and Lisa told the plaintiff that she had used the word "nigger" around her grandmother all of the time and the plaintiff's grandmother was ok with it. Plaintiff was especially offended that Jacobson tried to

justify racist behavior by using her dead grandmother.

14.     Jacobson also made comments about African-American people abusing welfare. She said that it was black people's fault that she could not get on welfare or get food stamps because they abused the system. When the plaintiff tried to get insurance, Jacobson told her that she bet her mom was on welfare and Obamacare.

15.     Plaintiff complained to Jacobson about the racial harassment she experienced from her and Fortner, but nothing was done to stop the harassment. Plaintiff also complained to the owner, Sonya Cole, about the racial harassment and told her that she had recorded one of her complaints to Jacobson, but Sonya Cole refused to listen to the recording and told the plaintiff to erase the recording. Sonya Cole did nothing to stop the harassment.

16.     At some point Sonya made the plaintiff a manager, but Jacobson also made a Caucasian employee, Tammy Veazey, a manager over the line. Jacobson did not want to promote the plaintiff to manager, so she made Ms. Veazey a manager also, even though Veazey had not worked at Gulf Bowl as long as the plaintiff had.

17.     Veazey was always talking bad about African-American people. For example, once she asked for a mechanic recommendation and the plaintiff provided her with one. Veazey replied "I would never let a nasty Mexican or black person touch my car because they always took short cuts" and would mess up her car. Veazey called one of the plaintiff's co-worker, Natalie, a "dumb, Jamaican bitch."

18.     On May 27, 2020, Plaintiff was working with Veazey on the line, when a server came back and told her to drop some shrimp. Veazey did not hear her so the plaintiff told Tammy to drop the shrimp. When Veazey tried to give it to the server, the shrimp was not cooked enough so the

plaintiff told her to cook it more. Veazey proceeded to throw the shrimp into the fryer and then threw the basket down, slinging hot grease on the plaintiff and burning her. Plaintiff told Veazey that she had been burned and Tammy called the plaintiff a "dumb bitch." Plaintiff tried to explain to her that she was just trying to tell her that the shrimp needed to be cooked more and Tammy said she would "never listen to a dumb, black bitch." Veazey then swung a tray at the plaintiff. Tammy stormed out of the kitchen and the plaintiff's fiancé, Brianna, was trying to calm her down and Tammy called her a "dumb black bitch."

19. Plaintiff went to the bowling counter and told the manager on duty, Cameron, what had happened. He called Jacobson to see what to do. Jacobson told him to send the plaintiff home. However, Veazey was not sent home and worked her entire shift.

20. Later that evening, the plaintiff told Jacobson that she had gotten what she wanted and she was quitting. The plaintiff quit because of the harassing environment at work, including the racial comments, physical abuse, discriminatory treatment and being sent home while Tammy was allowed to stay at work.

21. After the plaintiff quit, she went back to the Gulf Bowl to see a friend who was still a manager. Tammy told the plaintiff and Brianna that we could not be at the bowling alley any longer. Tammy then started sending the plaintiff racially offensive text messages.

22. The comments and environment the plaintiff was forced to work in was severe and pervasive. Defendant did not take any prompt, remedial action to correct the inappropriate behavior by its Caucasian managers and staff and therefore, the plaintiff worked in this hostile environment until she was forced to resign on May 27, 2020, because of the continued harassment.

### IV.   CAUSES OF ACTION

#### COUNT ONE - HOSTILE WORK ENVIRONMENT BASED ON RACE AND NATIONAL ORIGIN PURSUANT TO TITLE VII AND 42 U.S.C. §1981

23.  Plaintiff re-alleges and incorporates by reference paragraphs 1-22 above with the same force and effect as if fully set out in specific detail hereinbelow.

24.  Plaintiff was discriminated against because of her race, African-American, and national origin, Jamaican, in that she was been forced to work in a hostile work environment based on her race and national origin.

25.  The illegal harassment, as described above in paragraphs 6-22, included the use of offensive racial and national origin slurs directed at Plaintiff and made in Plaintiff's presence, the harassing and discriminatory conduct was unwelcome, was based on her race and national origin, and was so severe or pervasive that it affected the terms and conditions of her employment.

26.  Plaintiff complained about the racial/national origin harassment to management but no corrective action was taken and the harassment continued. Members of management also witnessed or participated in the harassing conduct, but did nothing to prevent or stop the harassment.

27.  Based on Defendant's conduct, Plaintiff suffered emotional distress, embarrassment, and humiliation.

28.  Defendant's actions were willful, with malice, and with reckless disregard of Plaintiff's federally protected rights.

29.  Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, an injunctive and declaratory judgment is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful

policies and practices as set forth herein unless enjoined by this Court.

### COUNT TWO - CONSTRUCTIVE DISCHARGE BECAUSE OF RACE AND IN RETALIATION FOR PROTECTED ACTIVITY PURSUANT TO TITLE VII AND 42 U.S.C. §1981

30. Plaintiff, adopts and re-alleges the factual allegations in paragraphs 1-29 above.

31. Prior to being constructively discharged on May 27, 2020, Plaintiff, an African-American had engaged in protected activity by making numerous complaints about racially harassing treatment she had experienced while working for Defendant.

32. Plaintiff's constructive discharge was because of her race and was also causally related to her complaints about race and national origin discrimination/harassment.

33. As a result of this retaliatory treatment, Plaintiff suffered damages in the form of lost wages, emotional distress, and other compensatory damages.

34. Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiff's federally protected rights.

35. Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, compensatory damages, punitive damages, and an injunctive and declaratory judgment is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981 and 42 U.S.C. §1981.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981 and 42 U.S.C. §1981.

3. Enter an order requiring Defendant to make Plaintiff whole by awarding her reinstatement, back-pay plus interest, front-pay, compensatory and punitive damages and/or nominal damages, declaratory and injunctive relieve, attorney's fees and expenses.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

Respectfully submitted,

/s/ **Kevin W. Jent**
Kevin W. Jent
Counsel for the Plaintiff


OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS,
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500


PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY

/s/ **Kevin W. Jent**
OF COUNSEL


**DEFENDANT'S ADDRESS:**
To be Served via certified mail

Cole & Cole, Inc. d/b/a The Gulf Bowl
    and Captain's Choice Restaurant
c/o F. Hugh Cole, Registered Agent
204 East Michigan
Foley, Alabama 36535

9